## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| | * | **Criminal No. 06-210** (EGS) |
| | * | |
| **v.** | * | |
| | * | |
| **MOORTHY SRINIVASAN RAM,** | * | |
| **Defendant.** | * | |

## UNITED STATES' OPPOSITION TO
## DEFENDANT'S PETITIONS UNDER 28 U.S.C. § 2255 TO VACATE,
## SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits this Opposition to defendant's Petitions Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody.

## SUMMARY

On October 11, 2006, defendant (a medical doctor) pled guilty to one count of False Statement in Application and Use of Passport, in violation of 18 U.S.C. § 1542 (hereinafter "Passport Fraud" or "Section 1542"). On December 13, 2006, the Court sentenced him to five months' imprisonment and three years' supervised release (a sentence which was within the Guidelines). Rita Bosworth, of the Federal Public Defender, represented him at the plea and sentencing proceedings. Shortly after defendant was released from imprisonment, his Probation Officer filed a report with the Court alleging that he had violated the conditions of his release in two ways. After a hearing on the violations, the Court revoked defendant's supervised release and sentenced him to 10 months' imprisonment. Thomas A. Key represented him at the revocation hearing.

Defendant has filed two Section 2255 pleadings, both of which claim that his counsel were ineffective. In the first one, he asserts that his use of a false social security number on a passport application did not constitute Passport Fraud and thus that Ms. Bosworth was ineffective because she permitted him to plead guilty to an offense he did not commit. Defendant has not established - as he must - deficient performance and prejudice with respect to this claim and it should be summarily denied. Defendant also contends that Ms. Bosworth failed to file a Notice of Appeal that he mailed to her. This claim is directly rebutted by defendant's own correspondence to counsel, in which he sought her advice about filing an appeal but never directed her to file one. Hence, the Court may summarily deny this claim. Alternatively, the Court should deny the claim after an evidentiary hearing at which (as her sworn Declaration attests) Ms. Bosworth will directly rebut defendant's claim.

In his second Section 2255 pleading, defendant asserts that he would have received a lighter sentence for violating his supervised release conditions if Mr. Key had somehow contested at the revocation hearing that defendant left the country more than once without permission while on release. Assuming for the sake of argument that defendant has the right to effective counsel at a such a hearing, the record shows that defendant has not established deficient performance and prejudice with respect to this claim and thus it should be summarily denied. Consistent with Fed. R. Civ. P. 58, the denial of each motion should be in a separate Order.[1]

---

[1]    As noted, defendant has filed two Section 2255 pleadings. Generally, a second or successive pleading is not permitted under Section 2255. See 28 U.S.C. § 2255. Here, however, the Court had not ruled on the first Section 2255 pleading when the second Section 2255 pleading was filed. Hence, we do not believe that the second pleading constitutes a "successive" motion for purposes of Section 2255. See In re Robert Moore 196 F.3d 252, 254-55 (D.C. Cir.

**The Written Plea Agreement**

On October 11, 2006, defendant entered into a written plea agreement with the United States. Exh. A. As part of that agreement, the United States agreed (among other things) that it would "not bring any additional criminal charges against [defendant] in the United States District Court for the District of Columbia or the Superior Court of the District of Columbia for the conduct set forth in the Statement of Offense." Id. ¶ 11. Defendant agreed to plead guilty to one count of violating Section 1542 in exchange for (among other things) a two point reduction in his offense level for acceptance of responsibility. Id. ¶¶ 1, 11. Defendant signed the agreement on October 11, 2006. Immediately above his signature is a statement that reads: "I am satisfied with the legal services provided by my attorney in connection with the plea agreement and matters related to it." Id. at p.5.

The written plea agreement included a document entitled "Factual Proffer in Support of Guilty Plea." Exh. B. The Factual Proffer stated in part:

> The defendant is a naturalized citizen on the United States. On September 12, 2003, while in Chennai, India, [defendant] reported that his U.S. passport was lost, and applied for a temporary passport. On that application, [defendant] falsely listed his deceased father's social security number as his own. [Defendant] received the passport on the same day. On September 17, 2003, [defendant] used that passport to travel back into the United States.
>
> [Defendant] knowingly and willfully submitted false information in the passport application because he knew that he was not using his real social security number, as he was required to do by federal law.

---

1999) (first § 2255 motion must be denied on merits before second § 2255 motion can be considered a "second or successive" motion). We request that the Court deny the two pleadings in separate documents. See Fed. R. Civ. P. 58 (stating that "[e]very judgment . . . must be set forth on a separate document"). The filing of such a judgment is important because it controls the time for filing an appeal. See Fed. R. App. P. 4; see also United States v. Johnson, 254 F.3d 279, 284-85 (D.C. Cir. 2001); United States v. Feuver, 236 F.3d 725, 727 (D.C. Cir. 2001).

Furthermore, the defendant submitted the false passport application in order to induce the United States into issuing him a passport for his personal benefit, and the United States issued a passport to him.

Id.

The last page of the Factual Proffer is entitled "Defendant's Acceptance of Factual Proffer." Under this heading appears the following paragraph:

> I have read entirely this Factual Proffer in Support of Guilty Plea and carefully reviewed every part of it with my attorney. The facts set forth above are true and accurate. I am fully satisfied with the legal services provided by my attorney in connection with this Factual Proffer and all matters relating to it. I fully understand this Factual Proffer and voluntarily agree to it. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this Factual Proffer. No agreements, promises, understandings, or representations have been made with, to, or for me other than those set forth above.

Id. at 4. Defendant's signature appears directly below this paragraph.

### The Plea Colloquy

On October 11, 2006, the Court placed defendant under oath and conducted a thorough colloquy with him pursuant to Fed. R. Crim. P. 11. 10/11/06 Tr. 2. During the colloquy, the Court confirmed that defendant had read the plea agreement "word for word" and then had signed the agreement. Id. at 4-5. The Court also confirmed that defendant was satisfied with the assistance of his counsel, Ms. Bosworth:

THE COURT: Are you satisfied with the services of your attorney?

THE DEFENDANT: Absolutely, sir.

Id. at 5.

The Court discussed with defendant the fact that, by pleading guilty, he gave up his right to challenge his conviction on appeal, and defendant stated that he understood:

4

THE COURT: You are giving up your right to appeal if you are found guilty.
You are giving up your right to challenge the conviction in the Court of Appeals.
Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT: You do retain the right to challenge the jurisdiction of the court.
But in all other respects, you are giving up your right to challenge anything.  Do
you understand that?  I mean, you will retain the right to challenge any illegal
sentence.  I would not knowingly sentence you or anyone else to an illegal
sentence but otherwise you give up those rights.  Do you understand?

THE DEFENDANT: Yes, sir, I understand.

Id. at 15.

The Court inquired whether defendant had reviewed and signed the factual proffer that

was attached to the plea agreement:

THE COURT: And for the record I am aware that you signed a proffer and statement of
the factual proffer.  Is that right?

THE DEFENDANT: Yes, sir.

THE COURT: Did you sign that before you read it or after you read it?

THE DEFENDANT: After I read it.

THE COURT: Do you understand it?

THE DEFENDANT: Yes, sir.

THE COURT: Is it true?

THE DEFENDANT: Yes, sir.

Id. 16-17.

The prosecutor then gave a factual proffer as follows:

The government's evidence would show that the defendant is a [naturalized]
citizen of the United States, and on September 12, 2003, he was in Chennai ...

5

India and he reported to the United States Embassy there that his United States passport had been lost and he applied for a temporary passport.

On that application, the defendant listed his deceased father's social security number as his social security number and on that day he received a temporary passport.

Indeed on September 17, five days later, he received that passport which he obtained falsely to travel back into the United States. Therefore, we would show that the defendant knowingly and willfully submitted false information, that is, the wrong social security number, his deceased father's social security number because he knew that it was false and during the course of his application he was required to submit truthful information.

The reason that he submitted the false passport application was to induce the United States into issuing him a passport for his own personal benefit and the United States did, in fact, issue that passport to him.

Id. at 17-18.

After the factual proffer, the Court asked defendant whether it was true and defendant affirmed that it was. Id. at 19. He also confirmed that he had no changes or additions to make to the proffer. Id. at 18-19. The Court accepted his guilty plea, set a sentencing date and ordered that a Presentence Report be prepared.

## The Presentence Report and the Sentencing

The Presentence Report ("PSR") reflected that "[w]hen interviewed, the defendant concurred with the Factual Proffer" that he signed on October 11, 2006 and that was discussed during the plea colloquy. PSR at ¶ 10. His base offense level was eight and was adjusted downward two levels for acceptance of responsibility, resulting in a total offense level of six. Id. ¶¶ 11-21. The PSR also reported that defendant was a medical doctor who no longer was licensed to practice, that he had convictions for Wire Fraud (five counts), Arson (one count) and juror/witness intimidation (two counts), and that these convictions arose from his attempt to

6

collect insurance proceeds after setting on fire a medical office in New York.  Id. at ¶¶ 23, 45-48.

While defendant was on probation for these offenses, "he was dishonest with the probation

officer, had unauthorized contact with his ex-wife, and traveled without permission."  Id. ¶ 23.

Defendant's criminal history category was II, resulting in a range of imprisonment of one to

seven months.  Id. ¶¶ 23-25, 64.  "Had [defendant] not received a two level decrease for

acceptance of responsibility in the offense level computation," his Sentencing Guidelines range

would have been four to ten months.  Id. ¶ 66.

At sentencing on December 13, 2006, the United States asked that the Court impose a

sentence of seven months' imprisonment, explaining that:

> This is a man who has a prior felony conviction, including arson, attempted
> witness tampering and mail and wire fraud for burning down his medical practice.
> This is somebody who is a fraud, who continues to commit fraud, who has
> committed fraud his entire life.
>
> The passport case that was before Your Honor was just the tip of the iceberg.  He
> has applied for multiple passports using his deceased father's social security
> number or using an alias.  He has told the passport office on different occasions
> that he lost his passport when he really didn't.  He has told them that he wants a
> new passport when he didn't really want a new passport.  He is incredibly
> manipulative, he's a liar, he's a fraud.

12/13/06 Tr. 6.

Ms. Bosworth urged the Court to impose a sentence of time served.  She pointed out that

defendant had served "just over three months ... which means he served half of his guideline

range" and that he "immediately" pled guilty and thus "did not waste government resources or

court resources."  Id. at 3.[2]

---

[2]     Before the day of sentencing, defense counsel filed a Sentencing Memorandum
requesting that defendant receive a sentence of time served.

Throughout the hearing, the Court expressed strong skepticism about defendant's truthfulness. Id. at 10 ("He's a fraud"); id. at 13 ("How can we believe anything that he says?"); id. at 13 ("He's got an interest in the outcome of this proceeding and I find it very difficult to believe anything he says"). When given the opportunity to address the Court, defendant declined to do so. At no time during the sentencing hearing did he complain about his attorney or voice any unhappiness or uncertainty about his decision to plead guilty.

The Court sentenced defendant to five months' imprisonment and three years' supervised release. Id. at 14. After imposing sentence, the Court informed defendant that "[y]ou have ten days from today's date to file a notice of appeal with the United States Court of Appeals for this circuit." Id.

### The Violation Report

Defendant completed the incarceration portion of his sentence on or about March 20, 2007 and then began his supervised release term. On May 8, 2007, his Probation Officer filed a Request for Course of Action with the Court, asking that the Court issue a warrant for defendant's arrest. Exh. C. In an attached Memorandum, the Probation Officer provided a detailed Violation Report in which she characterized the defendant's adjustment to supervision as "poor" and alleged that defendant had violated the conditions of his release in two ways: First, by leaving the "judicial district without the permission of the court or probation officer," and second, by responding untruthfully to her inquiries. Exh. D.

Regarding the first alleged violation, the Memorandum explained:

- On April 27, 2007 - just one month after defendant began serving his supervised release term - Patrick Cooper of the Canada Border Services Agency notified her that defendant had attempted to illegally enter Canada three times (on April 11, 12, and 26, 2007) and

8

that defendant had informed personnel at that agency that he had permission to travel out of the country to see his daughter.

Regarding the second alleged violation, the Memorandum explained:

- Defendant advised her that he was enrolled at the Virginia Commonwealth University, Pharmacy School, and that he was employed there. At her request, he provided her with documentation to support these claims, including a course schedule signed by a purported student advisor. When she called to confirm this information, she learned that the student advisor did not work at the School of Pharmacy and that there was no record that defendant was enrolled at the university.

- After she again asked defendant about his enrollment, he continued to claim that he was a student at the university. When she requested that he provide contact information to verify his claim, he left her a voicemail message stating that he had been suspended and that he was returning to the Washington, D.C. area. However, he did not return.

Id. at 1-2.

The Probation Officer also noted that under the Sentencing Guidelines, defendant's "alleged violation represents a Grade C violation" and that the "revocation table range is 4-10 months." Id. at 3.

The Court signed the warrant on May 8, 2007, and defendant was arrested on the warrant on or about May 22, 2007.

### The Revocation Hearing

On June 21, 2007, the Court held a hearing to determine if defendant's supervised release should be revoked. Defendant was represented at this hearing by Thomas A. Key.

The Probation Officer recommended that the Court sentence the defendant at the high end of the guidelines because he:

> failed to maintain compliance for even thirty days on supervised release. He not only attempted to leave the country but did leave the country without permission, and I don't believe he's amenable to [supervision], your Honor.

6/21/07 Tr. 2-3.

9

The prosecutor agreed and asked the Court to impose a sentence of 10 months' imprisonment. Id. at 8. In support of this request, she explained in part that placing defendant on supervised release again would be "a complete waste of time" and that defendant "just is not truthful to the Court or to anybody else he comes into contact with." Id. at 8-9.

Mr. Key acknowledged that defendant had violated the conditions of his release by going to Canada three times. However, counsel sought to put defendant's actions into the best possible light by explaining that defendant had done so "to attempt to obtain a medical license in Canada" and not because he intended to flee the country. Id. at 3-4. Mr. Key asked that the Court impose the minimum sentence and return defendant to supervised release. Id. at 3, 6.

The Court again expressed skepticism about defendant's truthfulness. Id. at 10 ("I don't know if he's telling the truth or not... it's difficult to believe your client"); id. at 11 ("So now it's very difficult for me, you know, to credit his representations through counsel"). After ascertaining that defendant did not have anything to say directly to the Court, the Court imposed a sentence of 10 months' imprisonment and wished defendant luck. Id. at 11-12 ("Good luck to you, hopefully for the last time").

## Defendant's Claims Under 28 U.S.C. § 2255

On or about January 2, 2007, while still serving his initial term of incarceration, defendant filed a pro se Section 2255 petition and a memorandum in support thereof. In these documents, he asserts that he did not violate 18 U.S.C. § 1542 because his legal research indicates that it is not a violation of that statute to knowingly use a false social security number on a passport application. He further contends that Ms. Bosworth was constitutionally ineffective because she disagreed with his research and permitted him to plead guilty to an

offense which, according to defendant, he had not committed.  Defendant also contends that Ms.

Bosworth was ineffective because she did not file a Notice of Appeal as he purportedly directed.

On or about July 7, 2007, after his supervised release had been revoked, defendant filed a

second pro se Section 2255 pleading.  In this pleading, he repeats his first claim regarding Ms.

Bosworth (but not the second claim regarding the Notice of Appeal).  He also adds a claim that

Mr. Key, the attorney who represented him at the supervised release revocation hearing, was

ineffective because counsel conceded during the supervised release revocation hearing that

defendant had gone to Canada three times.  Defendant now asserts that he told Mr. Key that he

had gone to Canada only once, that Mr. Key should have contested the allegations that defendant

went there two other times, and that had Mr. Key done so, defendant would have received a

lesser sentence.

As explained below, defendant's claims are without merit.

## ARGUMENT

### I.    Legal Principles

To prevail on his ineffective assistance of counsel claim, defendant bears the burden of

demonstrating that: (1) counsel's performance was deficient, that is, counsel "made errors so

serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment"; and (2) counsel's deficient performance "prejudiced the defense."  Strickland v.

Washington, 466 U.S. 668, 687 (1984).  Judicial "scrutiny of counsel's performance must be

highly deferential" and must "indulge a strong presumption that counsel's conduct falls within

the range of reasonable professional assistance."  Id. at 689.  To "affirmatively prove prejudice,

defendant "must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." Id. at 693-94.  The Court need

not examine the two components of an ineffective assistance claim in any particular order.  Id. at

697.  Indeed, the Court is not required "even to address both components of the inquiry if the

defendant makes an insufficient showing on one."  Id.

## II.    Defendant's Claims Regarding Ms. Bosworth Fail

### A.    Defendant Has Not Shown That Counsel Was Ineffective Regarding His Plea

Defendant's first claim regarding Ms. Bosworth is that she was constitutionally

ineffective because she permitted defendant to plead guilty to violating 18 U.S.C. § 1542 when,

according to defendant, his actions did not violate the statute.  More specifically, defendant

asserts that after he pled guilty but before he was sentenced, he did legal research that

demonstrated Section 1542 is not violated by the knowing and willing use of a false social

security number in completing a passport application.  According to defendant:

> I wrote a detailed letter to my Attorney Ms. Rita Bosworth about [his legal research], as I was waiting for the PSI Report before the sentencing.  I talked to her about the same issues when she came to CTF to discuss my PSI Report.  She vehemently told me that
>
> 1.    I pleaded Guilty
>
> 2.    She herself has prosecuted many Passport Fraud cases with False Social Security Numbers
>
> 3.    I was getting only a SHORT sentence.

Jan. 2, 2007 Memo., at 2.

Defendant thus contends that Ms. Bosworth mistakenly rejected his research and allowed

him to maintain his guilty plea or, as he states in his July 7, 2007 Section 2255 pleading,

12

"forced" him to maintain his guilty plea. Defendant's claim on this point should be summarily denied because he has not carried his burden of showing deficient performance and prejudice.

A person commits Passport Fraud when he or she "willfully and knowing makes <u>any false statement in an application for passport</u> with intent to induce or secure the issuance of a passport under the authority of the United States...." 18 U.S.C. § 1542 (emphasis added); <u>see also</u> <u>United States v. White</u>, 1 F.3d 13, 16 (D.C. Cir. 1993) ("[p]assport fraud ... requires proof that the accused (i) willfully and knowingly [made] a false statement in a passport application, (ii) with the intent to secure issuance of a United States passport contrary to the laws and regulations governing the issuance of passports").

Here, the record shows that before formally entering his plea of guilty, defendant signed a written Factual Proffer in which he admitted that he had knowingly and willfully used a false social security number on his passport application to obtain a temporary passport. Exh. A-2. During the Rule 11 colloquy, he stated - under oath - that he had read the Factual Proffer before signing it, that he understood the proffer, and after hearing the prosecutor's factual recitation, he agreed that her recitation of facts was correct. 10/11/06 Tr. 16-19. Thus, defendant has admitted that he "made a false statement in a passport application with intent to induce or secure the issuance of a passport under the authority of the United States...." 18 U.S.C. § 1542.[3]

---

[3]    In his January 2, 2007 Section 2255 pleading, defendant did not challenge his sworn admissions during the plea colloquy. In his second Section 2255 pleading, he claims (at 3) that he "mistakenly" printed his father's social security number on the passport application. This claim of "mistake" is self-serving and contradicted by his sworn statements during the plea colloquy. <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977) ("[s]olemn declarations in open court carry a strong presumption of verity").

Moreover, contrary to his claim, caselaw supports the conclusion that the knowing and willful use of a false social security number in a passport application violates the statute. In White, for example, the defendant was an attorney convicted of one count of violating Section 1542 and one count of aiding and abetting the violation of Section 1542. On appeal, the D.C. Circuit held that the evidence was sufficient to support his convictions, and the evidence showed (in part) that defendant, an attorney, had provided a false social security number to a client for the client to use in completing a passport application. White, 1 F.3d at 15; see also United States v. George, 386 F.3d 383, 386-87 (2d Cir. 2004) (noting that defendant had past convictions for Passport Fraud based on his knowing use of false birth places and false social security numbers on passport applications, and upholding his conviction for Passport Fraud in this case where he again listed a false birth place and false social security number on a passport application); United States v. Hart, 291 F.3d 1084, 1085 (9th Cir. 2002) (upholding defendant's § 1542 conviction where she had "falsely stated in her passport application that she had no social security number and had never been issued a United States passport"). Thus, the law is clear that the knowing and willful use of a false social security number on a passport application constitutes Passport Fraud.

On this record, where defendant has admitted to using a false social security number in a passport application to gain a passport and where the language of Section 1542 and cases interpreting the statute make clear that these actions violate the statute, defendant has not shown that Ms. Bosworth was deficient in permitting him to plead guilty to Passport Fraud.

Defendant's claim also fails because he has not established prejudice. To show prejudice in the plea context, a defendant must demonstrate that " 'there is a reasonable probability that,

but for counsel's errors, [defendant] would not have pleaded guilty and would have insisted on going to trial.' " United States v. Horne, 987 F.2d 833, 835 (D.C. Cir. 1993) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Here, defendant has not alleged, much less shown, that he would have given up the benefits that he received under the plea agreement - such as the two point reduction in his offense level (which lowered his possible range of imprisonment) - and gone to trial where the United States would have presented ample proof of his guilt. See 12/13/06 Tr. 6 ("The passport case that was before Your Honor was just the tip of the iceberg. He has applied for multiple passports using his deceased father's social security number or using an alias. He has told the passport office on different occasions that he lost his passport when he really didn't. He has told them that he wants a new passport when he didn't really want a new passport"). Thus, defendant has not established prejudice, and his claim fails for this additional reason.[4]

---

[4] In our view, the record establishes that defendant has not carried his burden and hence, that this claim may be summarily denied. However, we note that in her Declaration (attached as Exh. E), Ms. Bosworth attests that events did not unfold as defendant describes. She recalls that defendant wanted to plead guilty in this case and that before he entered his guilty plea, she discussed Section 1542 with him to ensure that he understood that his actions violated the statute. Id. ¶ 3. Defendant did not seem confused about whether his actions violated the statute. Id. She also explains that after he pled guilty, but before he was sentenced, she received correspondence from him indicating that he was confused about the state of the law. Id. ¶ 4. (A copy of this correspondence is attached as Exh. F.) She met with him before sentencing, discussed his concerns with him and explained the statute again to him. Exh.E, ¶ 5. She made clear to him that, while she did not see a basis to withdraw his plea, he could try to do so if he wished because that decision rested with him. Id. At the conclusion of their discussion, she believed that he understood that his actions violated Section 1542. Id. He told her that he wanted to proceed to sentencing. Id. She further attests that she never told him that she had prosecuted similar cases in the past, that she would not have said this because she has never served as a prosecutor, that she did not somehow prevent him from sending a letter to the Court expressing his concerns before he was sentenced, and that she did not "force" him to maintain his guilty plea. Id. ¶¶ 6-8.

**B.**     **Defendant's Claim Regarding the Notice of Appeal Fails**

Where, as here, a defendant claims that counsel provided ineffective assistance by not filing a notice of appeal, the Court should determine "whether counsel in fact consulted with the defendant about an appeal." Roe v. Flores-Ortega, 528 U.S. 470, 478 (2000). While there is no "bright line rule that counsel must always consult with the defendant regarding an appeal," see id. at 480, a counsel who does consult with the defendant "performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.'" United States v. Taylor, 339 F.3d 973, 978 (D.C. Cir. 2003); see also Roe, 528 U.S. at 477 (explaining that the Supreme Court has "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable" and provides ineffective assistance under Strickland); id. (explaining that "a defendant who explicitly tells his attorney not to file an appeal cannot later complain that, by following his instructions, his counsel performed deficiently") (emphasis in original). Thus, in a case where counsel consulted with the defendant about whether to appeal, the defendant's ineffective assistance of counsel claim will fail unless the defendant can show that counsel did not follow his or her explicit instructions regarding an appeal.

Here, defendant asserts that he instructed Ms. Bosworth to file a Notice of Appeal and that she failed to do so:

> My attorney did not ... file my Notice of Appeal which I had sent to her office within the required 10 days of Sentencing on December 13, 2006.

Jan. 2, 2007 Memo., at 2.

This claim is contradicted by defendant's own correspondence to counsel. On or about December 19, 2006, he sent a letter to Ms. Bosworth. Exh. G. He attached to this letter a

16

handwritten document entitled "Notice of Appeal." However, defendant did not direct counsel to file the Notice of Appeal; rather, he merely asked her advice about whether to file an appeal:

> I am enclosing an Appeals Form and <u>after reading thru this letter (attached) if you feel that it is appropriate, please file it</u>.

<u>Id.</u> (emphasis added); <u>see also id.</u> (stating "I am interested in filing an Appeal on my Sentence and <u>would appreciate an input</u>"); <u>id.</u> ("I need your input").

Moreover, defendant made clear his knowledge that his appellate rights were severely circumscribed. After asserting that a "lawyer friend of mine" had researched Passport Fraud and found that there were no cases involving the use of a false social security number on a passport application, he sought counsel's advice about filing a Section 2255 pleading:

> Direct Appeal vs. 2255
>
> Of course you are aware that I cannot raise the [social security] issue on Direct Appeal since we never raised it in the District Court. I could try Ineffective Assistance of Counsel which I <u>Do</u> <u>Not</u> want to raise.

<u>Id.</u> (emphasis in original).

Thus, in this letter, defendant sought Ms. Bosworth's advice about whether to file a Notice of Appeal and he evidenced his knowledge that his appellate rights were limited. However, contrary to his claim, he did not send her a Notice of Appeal and direct her to file it. On this record, then, defendant's claim should be summarily denied.

Alternatively, the Court should deny the claim after an evidentiary hearing. As Ms. Bosworth attests in her Declaration, defendant did not tell her to file a Notice of Appeal - in fact, he told her <u>not</u> to file such a document. She explains that after defendant was sentenced, she received correspondence from him about the possibility of filing an appeal. Exh. E, ¶ 10. After she received this correspondence, counsel visited him in the D.C. Jail. <u>Id.</u> ¶ 11. This visit

occurred before the ten-day period for filing an appeal had elapsed.  Id.  They discussed whether

he should file an appeal.  Id.  Ms. Bosworth explained the following to him: (1) because he had

pled guilty, he had very limited appellate rights; (2) she saw no valid basis for an appeal because

the sentence imposed was within the Guidelines; and (3) if defendant wanted to file a Notice of

Appeal, she would do so on his behalf.  Id.  At the conclusion of their discussion, defendant told

her that he did not wish to file a Notice of Appeal and thus Ms. Bosworth did not do so.  Id.

Hence, if the Court concludes that an evidentiary hearing is necessary, the testimony

adduced at that hearing will compel the conclusion that defendant's claim is not credible and that

it should be denied.[5]

---

[5]     Where there has been no consultation between defendant and counsel about
whether to file an appeal, the Court must assess "whether counsel's failure to consult with the
defendant itself constitutes deficient performance."  Roe, 528 U.S. at 478; see also Taylor, 339
F.3d at 978.  "'[C]ounsel has a constitutionally imposed duty to consult' only when 'there is
reason to think either (1) that a rational defendant would want to appeal (for example, because
there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably
demonstrated to counsel that he was interested in appealing.'"  Taylor, 339 F.3d at 978 (quoting
Roe, 528 U.S. at 480).  The fact that the defendant pled guilty is a "highly relevant factor" in this
analysis, "both because a guilty plea reduces the scope of potentially appealable issues and
because such a plea may indicate that the defendant seeks an end to judicial proceedings."  Roe,
528 U.S. at 480 (noting that a court evaluating a defendant's objective or subjective desire to
appeal after entering a guilty plea should also consider whether the defendant received the
sentence he bargained for, and whether the plea expressly waived or reserved some or all appeal
rights).  We do not believe that inquiry on this second point will be necessary, but if it is, the
record demonstrates that Ms. Bosworth consulted with defendant about filing an appeal and
defendant has not claimed otherwise.

### III.    Defendant Has Not Carried His Burden of Showing that Mr. Key's Assistance Was Ineffective

Defendant contends that Mr. Key - who represented him at the supervised release revocation hearing - was ineffective because counsel did not contest the Probation Officer's report that defendant had violated the conditions of his supervised release by attempting three times (rather than once) to enter Canada.

Preliminarily, it is not clear that defendant had the right to constitutionally effective counsel at his revocation hearing. Supervised release, like probation and parole, is not an absolute form of liberty, but rather a form of liberty constrained by conditions and subject to revocation if the releasee violates those conditions. Morrissey v. Brewer, 408 U.S. 471, 479 (1972) (parole revocation); see also United States v. Pratt, 52 F.3d 671, 675 (7th Cir. 1995) (supervised release revocation). Because "the revocation of parole [or supervised release] is not part of a criminal prosecution ... the full panoply of rights due a defendant in such a proceeding does not apply to parole [or supervised release] revocations." Morrissey, 408 U.S. at 480. Hence, in the revocation context, there is no automatic right to counsel. Gagnon v. Scarpelli, 411 U.S. 778, 789-90 (1973); Hyser v. Reed, 318 F.2d 225, 238 (D.C. Cir. 1963) (en banc) ("We hold due process does not require that indigent parolees be provided with appointed counsel when they appear before the Parole Board in revocation proceedings"). It thus follows that where there is no right to counsel, there is no right to effective counsel. See Coleman v. Thompson, 501 U.S. 722, 752 (1991).[6]

---

[6]    Although Morrissey and Hyser dealt with parole revocation and Gagnon with probation revocation, the same analysis applies to the revocation of supervised release. See, e.g., United States v. Kelley, 446 F.3d 688, 691 (7th Cir. 2006) (noting that the holdings in Morrissey and Gagnon "apply to supervised release revocations..."); United States v. Hall, 419 F.3d 980,

Even assuming that defendant had the right to effective representation at his supervised release revocation hearing, his claim regarding Mr. Key fails because he has not shown that counsel's representation was deficient and that defendant was prejudiced by any purported deficiency.

We turn first to prejudice.  See Strickland, 466 U.S. at 697 (the Court "need not examine whether counsel's performance was deficient before examining the prejudice suffered by the [petitioner] as a result of the alleged deficiencies").  According to the Probation Officer's Memorandum to the Court, defendant's two violations subjected him to a range of imprisonment of 4 to 10 months.  The Court imposed a sentence of 10 months.  Defendant argues that if Mr. Key had challenged the number of times that defendant left the country without permission, he would have received a lesser sentence.  We disagree.  Nothing in the record suggests that, if the Court had concluded that defendant left the country only once, a more lenient sentence would have been imposed.  Indeed, the record shows that the Court would not have heeded any plea for leniency for at least three reasons.

First, defendant "failed to maintain compliance for even thirty days on supervised release."  6/21/07 Tr. 2.  The Probation Officer also informed the Court that defendant was not "amenable to supervision."  Id.  She thus asked that the Court impose a sentence at the high end of the Guideline range, as did the prosecutor.  6/21/07 Tr. 2-3, 8.  Second, the PSR reported that while on probation for Wire Fraud, Arson, and juror/witness intimidation, defendant "was

---

985 n.4 (9th Cir. 2005) ("[p]arole, probation, and supervised release revocation hearings are constitutionally indistinguishable and are analyzed in the same manner"); Jones v. United States, 669 A.2d 724, 727 (D.C. 1995) ("[a] supervised release revocation hearing is the functional equivalent of a probation or parole revocation hearing.  The same evidentiary rules apply [and] decisions are made according to similar guidelines and standards of proof").

dishonest with the probation officer, had unauthorized contact with his ex-wife, and traveled

without permission." PSR ¶ 23. Hence, defendant had not only violated the conditions of

release in this case but he had a history of doing so. Third, it is significant that during the

revocation hearing, the Court did not even reach the second alleged violation - namely, that

defendant had responded untruthfully to the Probation Officer's inquiries. According to the

Violation Memorandum, defendant told his Probation Officer that he had enrolled at a university

in Virginia and when she asked for confirmation of this fact, defendant submitted false

documentation. Exh. D. Had the violations been contested, it seems likely that the Court would

have decided this issue against defendant (who does not offer any defense to the allegation and,

as explained below, would not have been a credible witness in his own behalf) and imposed a

sentence of 10 months based on this violation and defendant's admission that he left the country

once without permission. For all these reasons, defendant has not shown that, if his counsel had

challenged the allegation that defendant left the country three times without permission while on

supervised release (rather than merely once), there is a reasonable probability that the Court

would have imposed a more lenient sentence.

   This claim also fails because defendant has not shown that Mr. Key was deficient.

Defendant assumes that counsel could have successfully contested the allegation that defendant

went a total of three times to Canada while on supervised release. That assumption is dubious at

best. In assessing whether supervised release should be revoked, "the violative conduct need not

be criminal and need only be found by a judge under a preponderance of the evidence standard,

not by a jury beyond a reasonable doubt." United States v. Johnson, 529 U.S. 694, 700 (2000);

see also 18 U.S.C. § 3583(e)(3). Moreover, reliable hearsay evidence is admissible at a

revocation hearing.  See Morrissey, 408 U.S. at 489 (at a revocation hearing "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial"); Crawford v. Jackson, 323 F.3d 123, 128 (D.C. Cir. 2003); Pratt, 52 F.3d at 675; Stanton v. United States Parole Comm'n, 2007 WL 1847993, *3-4 (D.D.C. June 27, 2007).

Here, the Probation Officer's Violation Memorandum detailed the information that she had received regarding defendant's attempts to enter Canada on April 11, 12, and 26, 2007.  The report identified the source of this information (Patrick Cooper of the Canada Border Services Agency) and stated that: defendant had used an alias of "Ram Srinivasan" in trying to enter Canada; defendant claimed that he was attempting to enter Canada to visit his daughter; and defendant did not obtain permission from the Court or the Probation Officer when he tried to enter Canada.  Exh. D.  Defendant has suggested no reason why the Court could not rely on this reliable hearsay evidence, nor has he produced any proof to rebut these dates.  Moreover, it is clear that defendant would not have been a convincing witness on his own behalf, as the Court's comments during the sentencing hearing and the supervised release revocation hearing make clear.  See 12/13/06 Tr. 10 ("He's a fraud"); id. at 13 ("How can we believe anything that he says?"); id. at 13 ("He's got an interest in the outcome of this proceeding and I find it very difficult to believe anything he says"); 6/21/07 Tr. 10 ("I don't know if he's telling the truth or not...  it's difficult to believe your client"); id. at 11 ("So now it's very difficult for me, you know, to credit his representations through counsel").  Thus, if counsel had contested the allegation that defendant went to Canada three times (rather than just once) by calling defendant to testify that he went only once, it is highly unlikely that the Court would have believed his

22

testimony.  On this record, where the violation only needed to be shown by a preponderance of the evidence, where the hearsay evidence in the record is detailed and reliable, where defendant has not come forward with any defense to the charge that he left the country three times, and where defendant would not have been a credible witness, he has not met his burden of showing that counsel was deficient for conceding that defendant left the country three times.  See Strickland, 466 U.S. at 688, 690 (to show deficiency, defendant must show that, in light of all the circumstances as they appeared at the time of the conduct, "counsel's representation fell below an objective standard of reasonableness," i.e., "prevailing professional norms").[7]

## IV.     No Hearing Is Necessary

A district court is not required to hold an evidentiary hearing on a motion to vacate, set aside, or correct a sentence if the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255.  Here, the Court need not hold an evidentiary hearing to resolve defendant's ineffectiveness claims, which are unsupported by the record.  The D.C. Circuit "has never held that any claim of ineffective assistance of counsel, no matter how conclusory or meritless, automatically entitles a party to an evidentiary remand." United States v. Poston, 902 F.2d 90, 99 n.9 (D.C. Cir. 1990) (emphasis in original); see also United States v. Weaver, 234 F.3d 42, 46 (D.C. Cir. 2000) ("[w]hen a § 2255 motion involves ineffective assistance of counsel, a hearing is not required if the district court determines that the alleged deficiencies of counsel did not prejudice the defendant") (internal quotation marks

---

[7]     We have not obtained a Declaration from Mr. Key because the existing record provides a sufficient basis on which to deny this claim.  However, we have spoken with him and he contests defendant's version of events.  If the Court declines to summarily deny this claim, we reserve the right to submit a Declaration from Mr. Key or to call him as a witness at a hearing if necessary.

omitted); <u>United States v. Sayan</u>, 968 F.2d 55, 66 (D.C. Cir. 1992) (no need for hearing in §

2255 proceeding in part because the same judge who presided over the original proceedings

ruled on the § 2255 motion).

   In this case, the record conclusively shows that defendant is not entitled to relief.  Hence,

his motions should be summarily denied.

## <u>CONCLUSION</u>

   The Court should summarily deny defendant's claims in his January 2, 2007 pleading

regarding Ms. Bosworth.  Alternatively, the Court should deny defendant's claim about the

Notice of Appeal after an evidentiary hearing.  Consistent with Fed. R. Civ. P. 58, the Court

should, in a separate Order, summarily deny defendant's claim in his July 7, 2007 pleading that

Mr. Key was ineffective.

December 20, 2007         Respectfully submitted,

         JEFFREY A. TAYLOR
         United States Attorney
         D.C. Bar Number 498-610

         ROBERT D. OKUN
         Assistant United States Attorney
         Chief, Special Proceedings Division
         D.C. Bar Number 457-078


         _____/s/_____
         MARGARET J. CHRISS
         Assistant United States Attorney
         D.C. Bar Number 452-403
         Special Proceedings Division
         Margaret.Chriss@usdoj.gov
         555 4th Street, N.W.
         Washington, D.C.  20530
         (202) 307-0874

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, this 20th day of December 2007, a copy of the foregoing Opposition to defendant's Petitions Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody, and exhibits thereto, was served via first class mail, postage pre-paid, upon:

Mr. Moorthy Srinivasan Ram
Fed. Reg. # 43865-053
USP Hazelton
P.O. Box 2000
Bruceton Mills, WV 26525

                                          ____/s/_____
                                          Margaret J. Chriss
                                          Assistant United States Attorney

25