# **Exhibit 1**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| | * |
| | *  Criminal No. 06-210 (EGS) |
| | * |
| v. | * |
| | * |
| MOORTHY SRINIVASAN RAM, | * |
| Defendant. | * |

DECLARATION OF THOMAS A. KEY

Pursuant to 28 U.S.C. § 1746, Thomas A. Key declares as follows:

1.    I am an attorney licensed to practice in the District of Columbia and Illinois.  I graduated

from law school in 1993 and then worked in private practice in Chicago.  Between 1995

and 2002, I served as an Assistant District Attorney in Cook County, Illinois where I

handled a wide variety of cases, including murder prosecutions.  In 2002, after moving to

the Washington, D.C. area, I opened my own practice representing criminal defendants.

Thus, since 1995, my practice has consisted solely of criminal work.

2.    I represented Mr. Ram during his supervised release revocation hearing in case number

CR-06-210 before Judge Sullivan.

3.    I was retained in this matter shortly before the date of Mr. Ram's supervised release

revocation hearing.  I met with him the night before the hearing at the D.C. Jail.  During

this meeting, we reviewed and discussed the probation officer's Violation Report.  The

report charged Mr. Ram with two violations of his supervised release conditions: (1)

leaving the jurisdiction without permission, and (2) being untruthful with his probation

officer.  I cannot recall a lot of the particulars of our discussion, but I do recall that what

he told me in general did not make much sense, that I did not believe his version of

events would be at all convincing to the Court, and that I thought it would be detrimental to his interests to call him as a witness to contest the violations.

4.   Regarding the first violation, to the best of my recollection, Mr. Ram admitted that he had tried to go to Canada three times. He had returned each time, however, and I believed that this was our strongest and, indeed our only, argument for a more lenient sentence. Thus, I argued on Mr. Ram's behalf at the hearing that, while he admitted going to Canada, he had never attempted to flee the United States.

5.   I do not recall specifically what Mr. Ram told me during our meeting about the second violation charged in the Violation Report. I expected that I would have to offer some defense on behalf of Mr. Ram during the hearing about this violation, but the Court did not address the second violation.

6.   Because the Violation Report alleged two violations, going into the hearing, I believed that if the Court found that Mr. Ram had violated the conditions of his supervised release, his sentence would depend on whether the Court concluded that he had left the country (the first alleged violation) and/or that he had been untruthful to the Probation Officer (the second alleged violation). I did not expect that the Court would calculate Mr. Ram's sentence based on the number of times he admitted going to Canada. Further, I did not believe that I could successfully contest this number by presenting Mr. Ram's testimony because, as noted above, I had concerns about his credibility as a witness on his own

behalf.  Rather, my strategy to obtain a lenient sentence was to emphasize what I saw as

the only positive fact - that is, that Mr. Ram did not attempt to escape the Court's

jurisdiction but instead returned to this country.

I declare under penalty of perjury that the foregoing is true and correct.

Date: _2 - 7 - 08_

_____
Thomas A. Key

3